## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JACQUELINE SPARACINO,

        Plaintiff,

        v.

SCRANTON SCHOOL DISTRICT,
et. al.,

        Defendants.

CIVIL ACTION NO. 3:23-CV-01726

(SAPORITO, J.)

## <u>MEMORANDUM</u>

The plaintiff, Jacqueline Sparacino, brings this action against four defendants concerning alleged retaliatory actions that caused her to resign from her position: (1) the Scranton School District ("SSD"); (2) the Superintendent of Schools for the Scranton School District, Melissa McTiernan ("McTiernan"); (3) the Principal of Northeast Intermediate School, Joseph Hanni ("Hanni"); and (4) the Vice Principal of Northeast Intermediate School, Jason Schlingman ("Schlingman"). Before the Court is the defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 43). The parties have fully briefed the motion (Doc. 46; Doc. 47; Doc. 50) and it is ripe for review.

## I.    Background[1]

In general, the plaintiff has served as a professional educator for over fifteen years, spanning three school districts (in both Pennsylvania and Virginia), seven school buildings on a permanent basis, and numerous other schools as a day-to-day substitute teacher. The plaintiff claims that she had never had a disciplinary issue with an administrator, much less defendant Hanni, until the following events.[2]

In 2021, the plaintiff was hired for a teaching position at Northeast Intermediate School by defendant Hanni. The plaintiff became a coach for the school's softball team almost a year later, and on April 5, 2022, the plaintiff was coaching the school's first softball game of the season when an altercation between two parents broke out in the stands.[3] The plaintiff, in response, looked around for school administrators to deal with the altercation but found that none were present. The altercation

---

[1] We have taken the facts from the plaintiff's amended complaint. (Doc. 26).

[2] The following events are only a subsect of those alleged by the plaintiff as the plaintiff's amended complaint spans over thirty pages of alleged retaliatory conduct. We have included the following allegations as representative of the total alleged conduct.

[3] One of the spectators allegedly involved Tanya Festa, a friend of the plaintiff and someone that the plaintiff alleges defendant Hanni harassed some time ago.

was broken up by other spectators at the game. Immediately after the game, the plaintiff called defendant Hanni to inquire about the altercation but failed to reach him. The plaintiff then called Vice Principal Angela Keating to discuss the incident. Ms. Keating told the plaintiff on the phone call that she would discuss the issue with her the next morning.

A week later, on April 12, 2022, the plaintiff was coaching the school's softball game when she noticed that defendant Hanni was again absent from the school's softball game. Although she did not report him for his absence, the plaintiff believes that an additional school employee reported defendant Hanni's absence to central administration, causing him to be "reprimanded by his superiors." However, the plaintiff's amended complaint fails to indicate that defendant Hanni's presence at the softball game was a requirement of his employment duties. In the plaintiff's words, "[t]he Plaintiff's relationship with Defendant Hanni soured after this point in time. Defendant Hanni's crusade to retaliate against and target the Plaintiff, begins in earnest at this point."

For the next year, the plaintiff alleges that defendant Hanni, with support from the other defendants, consistently targeted, harassed, and

retaliated against her in response to the reporting. The plaintiff's amended complaint contains over thirty pages of detailed allegations that highlight the numerous alleged retaliatory actions. For example, on April 18, 2022, the plaintiff alleges defendant Hanni pulled her into his office and accused her of picking on an autistic support student. Four days later on April 22, 2022, the plaintiff alleges that two of her student athletes told her that defendant Hanni had called them into his office and interrogated them about a conversation they had with the plaintiff. On May 11, 2022, the plaintiff alleges that defendant Hanni emailed her to report to his office just to criticize the plaintiff for being too close to her students. The plaintiff avers that "Mr. Hanni was screaming, slamming his hands on the desk, and spitting when he spoke, as he was so out of control with rage."

On June 15, 2022, two weeks prior to the end of the academic year, the plaintiff alleges she received a call to report to the main office. She claims that defendant Hanni, along with other school employees, were present. At the meeting, the plaintiff was informed that her Level I Teaching Certification was expired and that she was suspended with pay until she received a letter from the Pennsylvania Department of

Education confirming her Teaching Certification. In response, the plaintiff's Union Representative pulled up the Teacher Information Management System website proving that her Certification had not expired. The school, however, reaffirmed its decision and suspended the plaintiff until she provided the requested information from the Pennsylvania Department of Education. The plaintiff alleges she provided the Certification to the school on June 16, 2022, and she returned to work on June 17, 2022.

The plaintiff alleges that on January 3, 2023, defendant Hanni came into her classroom for an informal observation. After her class, the plaintiff states that defendant Hanni filled out a "Stand Alone Rubric Observation Report" containing his observation comments. The plaintiff alleges that defendant Hanni "had nothing but positive and glowing comments of her teaching abilities and classroom atmosphere." Nevertheless, on January 25, 2023, the plaintiff asserts that defendant Hanni had altered the Report and rated the plaintiff as "Needs Improvement" or "Failing." She avers that defendant Hanni submitted the altered report to the State rather than the report containing the original comments.

On January 10, 2023, the plaintiff alleges that she attended a meeting with defendant Hanni and defendant Schlingman. In that meeting, both defendants informed the plaintiff that she would be suspended with pay for telling a female student that "she was a problem and for threatening another student at dismissal." The plaintiff alleges that while she attempted to dispute the accusations, she was told to "stop speaking," and that she had to leave the building. The plaintiff explains that she then learned, via email, that her suspension was being investigated by defendant Hanni, the same person the plaintiff alleges "whose mission it was to target/harass/retaliate against and defame the Plaintiff."

On January 17, 2023, the plaintiff received a call that her investigation was complete and to report to a meeting held on January 18, 2023. She had remained on suspension for seven school days, and during this time, she was never interviewed by anyone regarding the matter. During that meeting, the plaintiff was informed by a non-party that she was to return to work on January 19, 2023, with a required training course titled "Exploring Professionalism."

On March 23, 2023, the plaintiff received an email telling her she

was being suspended with pay and benefits until further notice because of allegations against her for physical contact with a student. While under investigation, the plaintiff alleges that she was told she could come back to work under a safety plan. On April 17, 2023, the plaintiff was sent a notice for a Loudermill Hearing[4] scheduled for April 20, 2023, which was rescheduled for April 26, 2023. On April 24, 2023, however, the defendant cancelled the Loudermill Hearing on the condition that the plaintiff return to work immediately. The plaintiff accepted this proposition and returned to work. The plaintiff was ultimately suspended for twenty-two school days.

On June 2, 2023, the plaintiff alleges that she was observed by defendant Schlingman for purposes of her teacher's evaluation. Two weeks later, the plaintiff alleges she received her "Formal Observation Report" which rated her as "Proficient" in all categories. However, on June 20, 2023, the plaintiff alleges that her Classroom Teacher Rating Form was altered as "Needs Improvement," completely disregarding her

---

[4] A Loudermill Hearing refers to the case, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), where the Supreme Court held that public employees are entitled to a pretermination hearing and an opportunity to present evidence challenging their disciplinary actions.

previous evaluations. It was after this event that the plaintiff alleges that "feeling as though she had no other choice, but to leave [the school]," she transferred to Whittier Elementary School. The plaintiff has brought this action in response to the defendants' alleged retaliatory conduct that caused her to transfer schools.

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Moreover, "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Courts may consider the facts alleged on the face of the complaint in addition to "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). While it must accept all allegations in the complaint as true, the Court does not have to accept "unsupported

conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007)).

## III.    Discussion

In total, the plaintiff has alleged twenty-five counts against four defendants. *See generally* (Doc. 26). The defendants have moved for dismissal on all claims. (Doc. 43). We will address each claim individually.

### A.    Retaliation (Counts I-III)

The plaintiff alleges retaliation claims against SSD, defendant Hanni, and defendant McTiernan in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). To establish a *prima facie* case of retaliation under either Act, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). Here, the plaintiff bases her retaliation claims on two activities: (1) the defendants' retaliation against the plaintiff for reporting "the safety issue of not

having an administrator present at the softball game" (Doc. 47, at 29); and (2) the defendants' retaliation against the plaintiff for defendant Hanni's "knowledge of [the plaintiff's] friendship with Festa, and his harassment of Festa." (*Id.*, at 21). However, in either case, the plaintiff has failed to sufficiently plead any necessary "engage[ment] in activity protected by Title VII" in her amended complaint, and thus, we will grant the defendants' motion to dismiss on this claim. *Moore*, 461 F.3d at 340 (finding that a plaintiff must show that "she engaged in activity protected by Title VII" to sustain her retaliation claim).

First, we analyze the plaintiff's allegation concerning defendant Hanni's harassment of the plaintiff's friend, Ms. Festa. Specifically, the plaintiff alleges that "Ms. Festa is one (1) of a number of women, whom the Plaintiff understands that Defendant HANNI has harassed, over the years." (*Id.*, at 20). The plaintiff contends that "[b]ased upon this knowledge, Defendant HANNI retaliate[d] against Plaintiff for fear of her informing others of the allegations of harassment of a sexual nature, against Defendant HANNI by Festa, and the potential for Plaintiff's making claims of sexual harassment herself, and/or encouraging co-workers to do so, if need be." (*Id.*). But the plaintiff's amended complaint

only alleges that Ms. Festa was merely "harassed" (Doc. 26, ¶ 24); it does not allege harassment as protected by Title VII. *See* 42 U.S.C. § 20003-2(a)(1) (including protections for an "individual's race, color, religion, sex or national origin"). Indeed, as the Third Circuit has held, "[m]any may suffer … harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Jenson v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006). Therefore, the plaintiff's amended complaint fails to allege the necessary protected conduct under Title VII to invoke its protections for her retaliation claim.

Nonetheless, we note that even if the plaintiff alleged sufficient claims of defendant Hanni's sexual harassment against Ms. Festa in her amended complaint, as she attempts to do in her opposition brief to the defendants' motion to dismiss (Doc. 47, at 20–21), the plaintiff's allegations still fail to constitute protected activity necessary for a retaliation claim under Title VII. In general, an employee "engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 (3d Cir. 2016)). These include formal charges of

discrimination "as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 552 (W.D. Pa. 2009) (citing *Sumner v. U.S. Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990)). Here, the plaintiff fails to allege any engagement, such as complaints, formal charges, informal protests, or any conduct, concerning defendant Hanni's alleged sexual harassment. Instead, the plaintiff relies on the assertion that her mere knowledge of defendant Hanni's alleged sexual harassment against Ms. Festa constitutes sufficient engagement in a protected activity by Title VII. But we cannot identify any support for the assertion that mere knowledge of sexual harassment can serve as a basis for engagement in protected activity for a retaliation claim under Title VII, and the plaintiff further fails to direct this Court to any supporting precedent. Indeed, without any sufficient allegations of protected activity, the plaintiff has failed to adequately plead a claim of retaliation under Title VII concerning the plaintiff's friendship with Ms. Festa.

Additionally, the plaintiff's amended complaint is devoid of allegations which identify a protected activity necessary for her retaliation claim concerning her report of defendant Hanni's absence at the softball game. As we noted above, Title VII protects conduct only based on an "individual's race, color, religion, sex or national origin." 42 U.S.C. § 20003-2(a)(1); *see also Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 139 (E.D. Pa. 2020) (finding that the plaintiff's report to her supervisors about being misgendered constituted protected activity for purposes of retaliation); *see Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 715–16 (E.D. Pa. 2021) (holding that the plaintiff's gender-based complaints constituted protected activity for retaliation claims under Title VII); *see also Mitchell v. Continental Real Estate Management Inc.,* 2024 WL 3868228, at *5 (M.D. Pa. Aug. 19, 2024) (concluding that the plaintiff's complaints of sexual harassment satisfied the "protected activity" prong of retaliation claims). But the reporting of a supervisor's absence from a softball game is not the type protected by Title VII and falls outside its protections; it concerns matters independent of an "individual's race, color, religion, sex or national origin." 42 U.S.C. § 20003-2(a)(1). Therefore, the plaintiff has failed to

allege a protected activity stemming from Title VII to satisfy the first element of her retaliation claim concerning her reporting of defendant Hanni's absence. We will grant the defendants' motion to dismiss on these counts. We need not analyze the remaining two elements to make this determination.

### B.    Sex Discrimination (Counts IV-VI)

The plaintiff alleges sex discrimination claims against SSD, defendant McTiernan, and defendant Hanni in violation of Title VII and the PHRA. The plaintiff's sex discrimination claims are considered disparate treatment claims, ones that occur when an employee "has treated [a] particular person less favorably than others because of" a protected trait. *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 548 (M.D. Pa. 2015) (quoting *Ricci v. DeStefano*, 557 U.S. 577 (2009)). Sex discrimination claims under the PHRA and Title VII are analyzed under the same framework, *see Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 425 n.3d (3d Cir. 2001), requiring the application of the *McDonnell Douglas* burden-shifting framework test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden-shifting framework consists of three steps. First, a plaintiff must

show a *prima facie* case of discrimination. *Id.* Next, if the plaintiff succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's [action]." *Id.* Finally, if the defendant satisfies its burden, the plaintiff must introduce evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. *Id.*

At the motion to dismiss stage, the plaintiff must only establish a *prima facie* case of sex discrimination. In general, the "central focus" of a *prima facie* case "is always whether the employer is treating 'some people less favorably than others because of their … sex.'" *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)). To do so, courts require a plaintiff to show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of unlawful discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)); *Rorke v. Toyota*, 399 F. Supp. 3d 258, 276 (M.D. Pa. 2019).

Here, the plaintiff alleges that she faced sex discrimination when she was suspended with pay for a longer period of time than her male colleague with an additional requirement that she return to work under the terms of a Safety Plan. (Doc. 26, ¶¶ 118, 119); (Doc. 26, ¶ 131); (Doc. 26, ¶ 142). The defendants do not contest the first three prongs of the plaintiff's discrimination claim. Rather, they contest the fourth prong, arguing that the plaintiff's allegations fail to rise to an inference of unlawful discrimination because her alleged unidentified male colleague proves too vague to fit the criterion. (Doc. 26, at 6–7). We disagree.

It is true that "[t]he failure to identify similarly situated persons dooms an equal-protection claim." *Stradford v. Sec'y of Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). Moreover, we agree that equal protection claims must allege more than broad generalities in identifying a comparator. *Brooks v. State College Area School District*, 707 F. Supp. 3d 448, 468 (M.D. Pa. 2023). Nevertheless, at the pleading stage, a plaintiff must only allege facts "sufficient to make plausible the existence of … similarly situated parties." *Perano v. Township of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011). We find the plaintiff has done so here.

The plaintiff alleges that her treatment differed from a male colleague, in the same or similar circumstances as her, regarding a student complaint. (Doc. 26, ¶¶ 118, 119). She details that she remained on suspension for a longer period than that colleague and additionally returned with a "Safety Plan" requirement, a condition never presented to the fellow male teacher. *Id.* These allegations do not fit the defendants' categorization of "an unidentified male colleague" and offer far more detailed allegations than those dismissed by courts. *See Perano,* 423 F. App'x at 238 (holding that the language "other similarly situated residential and commercial developers" proved too broad to serve as a comparison). For these reasons, the plaintiff's allegations sufficiently make plausible the existence of a comparable party, and thus, provide sufficient allegations to support the plaintiff's claim for sex discrimination. We will deny the defendants' motion as to these counts.

C.    First Amendment Retaliation (Count XX)

The plaintiff alleges First Amendment retaliation claims against defendants McTiernan, Hanni, and Schlingman. To establish a First

Amendment retaliation claim, a public employee[5] must show that his or her speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action. *Flora v. Cty of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015); *see also Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). If the employee establishes both of those predicates, the burden shifts to the employer to show that it would have taken the same action even if the speech had not occurred. *Id.* A public employee's statement is protected by the First Amendment when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* at 175 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

The defendants have moved to dismiss the plaintiff's First Amendment retaliation claims on the basis that her speech was not protected by the First Amendment because she spoke as an employee of

---

[5] Neither party disputes that the plaintiff is a public employee for purposes of her claim.

the District rather than a citizen. In analyzing the first prong of the test—whether she spoke as a citizen—to determine whether the plaintiff's statement is protected by the First Amendment, the key question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). The Supreme Court's opinion in *Garcetti* sets forth the controlling test for determining whether a public employee's speech was made incident to his employment duties: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The "controlling factor" is whether the statements were "made pursuant to [the speaking employee's] duties," that is, whether such utterances were among the things that the employee "was employed to do." *Id.* The *Garcetti* Court did not advance a framework for defining when an employee speaks pursuant to his official duties. *Id.* at 424. It did, however, condemn reliance on "excessively broad job descriptions." *Id.* at 424–25. Further, it cautioned against a focus on formal job descriptions because "[t]he proper inquiry is a practical one." *Id.* Courts

have found that "[f]actors relevant to the analysis include the employee's duties, the impetus for his or her speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed." *Lahovski v. Rush Twp.*, 441 F. Supp. 3d 43, 53 (M.D. Pa. 2020) (citing *Brown v. Tucci*, 960 F. Supp. 2d 544, 576 (W.D. Pa. 2013)). "Consideration may also be given to 'whether the speech was made inside or outside of the work place and whether it concerned the subject matter of the speaker's employment.'" *Id.* (quoting *Brown*, 960 F. Supp. 2d at 576).

Here, the plaintiff has failed to allege facts indicating that she was not acting pursuant to her official duties when reporting the altercation at the softball game, and thus she has failed to allege that her speech was protected by the First Amendment. The plaintiff does not allege explicitly that the reporting of her supervisor did not fall within the ordinary scope of her employment duties. *See generally* (Doc. 26); *cf Flora*, 776 F.3d at 180 (denying a motion to dismiss because "[a]s claimed in his complaint, … [the plaintiff's] ordinary job duties did not include" his protected speech). Moreover, the plaintiff's factual allegations, even viewing them in the light most favorable to the plaintiff, fail to indicate otherwise.

First, the plaintiff was employed as a softball coach for the District during the altercation. (Doc. 26, ¶ 22) ("The Plaintiff was in the dugout, with the team, and assistant coach, Allison Solsman, at the time the altercation broke out."); *See generally, e.g., Kennedy v. Bremerton School District*, 597 U.S. 507 (2022) (considering the plaintiff a public school employee while coaching a high school football team). Second, the plaintiff called school officials in response to the altercation to alleviate the situation rather than any independent private party. (*Id.*) ("Plaintiff looked around for an administrator" and "Plaintiff first called the Defendant HANNI … then called Vice Principal Angela Keating…."). Third, the subject matter of the report concerned an additional school official and that official's alleged administrative duties. (*Id.*). Fourth, the plaintiff alleges that she reported defendant Hanni pursuant to a School Board Policy Manual. (Doc. 47, at 32). In summary, the plaintiff alleges that she, still under supervision from the District, reported another school official to other school officials for his failure to perform his administrative duties pursuant to a school policy. These allegations indicate that the plaintiff reported defendant Hanni's absence "up the chain of command" in the scope of her employment duties rather than a

private citizen, and thus appear to be outside the scope of the protections guaranteed by the First Amendment. *See Flora*, 776 F.3d at 177 (3d Cir. 2015) (citing *Foraker v. Chaffinch*, 501 F.3d 231, 241–43 (3d Cir. 2007), *abrogated on other grounds by Borough of Dureya, Pa. v. Guarnieri*, 564 U.S. 379 (2011)) (holding that defendants' statements concerning hazardous conditions at a firing range were made pursuant to their official duties since they were obligated to report that type of information up the chain of command). Indeed, we cannot identify any allegations in the amended complaint to infer that the plaintiff was speaking as a private citizen outside the scope of her employment duties. Therefore, because the plaintiff cannot satisfy the first element of her First Amendment retaliation claim, we will grant the defendants' motion to dismiss on this count.

### D.   Fourteenth Amendment Violation of Due Process (Count XXI)

The plaintiff alleges Fourteenth Amendment due process violations against defendants McTiernan, Hanni, and Schlingman. To state a claim under § 1983 for deprivation of procedural due process, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life,

liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). The defendants have moved to dismiss the plaintiff's due process claims on the basis that her only recognizable due process claim, three suspensions with pay, do not constitute a due process violation as construed.

Our analysis first requires us to ascertain which actions the plaintiff pleads deprived her of due process. In her amended complaint, the plaintiff alleges due process violations based on all "adverse employment actions against the Plaintiff." (Doc. 26, ¶ 247). But as the defendants note, even though the plaintiff alleges in her opposition brief that "Plaintiff's suspensions with pay are just some of the adverse employment actions taken against her" (Doc. 47, at 26), the plaintiff has failed to identify any other adverse employment actions aside from her suspensions with pay. (Doc. 50, at 10). Indeed, we can only identify three actions within the plaintiff's amended complaint that constitute an adverse employment action: (1) a one-day suspension resulting from her certification to work as a teacher; (2) a seven-day suspension stemming from an allegation of child abuse; and (3) a twenty-two-day suspension

concerning child endangerment. (Doc. 26, ¶ 30); (Doc. 26, ¶ 43); (Doc. 26, ¶ 63). Therefore, the plaintiff's allegations of suspension with pay will be considered the only adverse actions for her Fourteenth Amendment due process claims against the defendants.

Here, the defendants do not contest that a suspension with pay may be considered a protected liberty interest sufficient for a Fourteenth Amendment due process claim. Indeed, courts have held that, while maybe minimal, suspensions with pay reflect some property interest. *See e.g., Kairo-Scibek v. Wyoming Valley W. Sch. Dist.*, 880 F. Supp. 2d 549, 558 (M.D. Pa. 2012) (finding the plaintiff's interest in not being suspended with pay to be minimal); *see also Deltondo v. Sch. Dist. of Pittsburgh*, No. 2:22-350, 2023 WL 1108389 at *3–4 (W.D. Pa. Jan. 30, 2023) ("Numerous courts have held … the property interest in not being suspended with pay" is "minimal."). The defendants, however, argue plaintiff has not adequately alleged "the procedures available to [her] did not provide 'due process of law.'" *Hill*, 455 F.3d at 233–34; *see* (Doc. 46, at 11) ("Plaintiff has not named what process defendants did not provide."). We agree.

The plaintiff describes in her amended complaint the three

suspensions and the procedures undertaken by the defendants as they relate to those suspensions. But the amended complaint fails to specify the deficiencies in those procedures. Instead, the plaintiff merely alleges that the defendants "fail[ed] to provide Plaintiff with Due Process of Law." (Doc. 26, ¶ 246). The allegations, however, are conclusory and do not provide the court with sufficient facts to determine whether the plaintiff has alleged the basis of a Fourteenth Amendment due process claim. We will therefore grant the defendants' motion to dismiss on this count and permit the plaintiff to amend her complaint.

### E.    Intentional Infliction of Emotional Distress (Counts VII, VIII, XXIII)

The plaintiff alleges intentional infliction of emotional distress claims against defendants McTiernan, Hanni, and Schlingman. Under Pennsylvania law, a claim for intentional infliction of emotional distress ("IIED") must show: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe." *McCullough v. Wellspan York Hospital*, 2021 WL 711476 at *4 (M.D. Pa. 2021) (quoting *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)). The defendants

have moved to dismiss the plaintiff's IIED claims on two premises. First, the defendants contest that the defendants are shielded from liability from IIED claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). Second, they argue that even if the PSTCA does not preclude liability, the plaintiff has failed to state a *prima facie* claim for IIED. While we find the PSTCA does not shield the defendants from liability from IIED claims, we will grant the defendants' motion to dismiss due to the plaintiff's failure to allege sufficient facts for a *prima facie* IIED claim.

We first address the defendants' argument that the plaintiff's IIED claims are precluded under the PSTCA. (Doc. 46). Under the PSTCA, local agencies are immune from liability generally "for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. However, the statute makes clear that this immunity is not absolute in all circumstances. Indeed, in one such example, the statute provides that immunity is "waived … to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees." This narrow subset of negligent acts includes nine

exceptions.[6]

The PSTCA additionally dictates that local immunity does not extend to acts or conduct that constitute "a crime, actual fraud, actual malice or willful misconduct." Pa. Const. Stat. § 8542(a)(2). In the context of immunity under the PSTCA, willful misconduct has the same meaning as "intentional tort." *See E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 502 n.2 (E.D. Pa. 2019) (citing *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995)). Therefore, intentional torts, such as a claim for IIED, fall outside the PSTCA's scope of immunity for local officials and are not precluded from liability under the Act. For this reason, the defendants' contention that the PSTCA precludes liability for IIED claims against the defendants fails as a matter of law.

Nonetheless, we are persuaded by the defendants' second argument, that the plaintiff failed to plead a *prima facie* claim. In general, courts have consistently held that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of

---

[6] The exceptions concern: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. 42 Pa. Cons. Stat. Ann. § 8541.

outrageousness necessary to provide a basis for recovery" for an IIED claim. *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). A plaintiff's termination or resignation is not enough to provide as a basis for an IIED claim, as the Third Circuit has noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event." *Cox*, 861 F.2d at 395 (quoting *Brieck v. Harbison-Walker Refractories*, 624 F. Supp. 363, 373 (W.D. Pa. 1985) *aff'd in relevant part* 822 F.2d 52 (3d Cir. 1987)). Moreover, courts have additionally held that difficult workplace environments alone cannot serve as a basis for an IIED claim. *See Madreperla v. Williard Co.*, 606 F. Supp. 874, 880 (E.D. Pa. 1985) (citing *Wells v. Thomas*, 569 F. Supp. 426 (E.D. Pa. 1983)) ("[P]remediated plans[s] to force an employee to resign by making employment conditions difficult typically does not amount to extreme or outrageous conduct sufficient to sustain a cause of action for intentional infliction of emotional distress."); *see also Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 845 (E.D. Pa. 2000) (finding that actions such as general criticism, public reprimand, professional disparagement, and personal

disparagement does not serve as "extreme or outrageous" behavior for IIED claims). Indeed, courts in this District have held that IIED claims are only reserved for conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 541 (M.D. Pa. 2009) (citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

Upon review of the plaintiff's amended complaint, the plaintiff has failed to allege any facts that could be considered "extreme or outrageous" behavior. The defendants aver that all the plaintiff's alleged actions fall within each defendant's employment duties. (Doc. 50, at 16) ("[All] tasks are within the scope of Principal Hanni's duties to evaluate teacher performance and support school security" and "Vice-Principal Schlingman's interactions … are also within the ambit of his duties."). The plaintiff does not dispute this contention[7] and further fails to direct this Court to any allegations that indicate otherwise. Therefore, even

---

[7] Regarding the IIED claims, the plaintiff's opposition brief only contests the defendants' argument concerning immunity under the PSTCA. It does not respond to the defendants' argument that the plaintiff's allegations fall short of extreme or outrageous conduct. *See generally* (Doc. 47).

viewing the allegations in the light most favorable to the plaintiff, the defendants' alleged behavior is better categorized as "[b]orish or improper" within the scope of their employment duties, rather than "extreme or outrageous" behavior sufficient to sustain a cause of action for intentional infliction of emotional distress. *Fugarino*, 123 F. Supp. 2d at 844. This type of behavior, however, "simply does not rise to the level of outrageousness or atrocity necessary to state an IIED claim." *Id.* We will therefore grant the defendants' motion to dismiss on these counts.

## F.    Negligent Infliction of Emotional Distress (Counts IX, X, XXIV)

The plaintiff alleges negligent infliction of emotional distress claims against defendants McTiernan, Hanni, and Schlingman. In general, to state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must plead a *prima facie* case of negligence and then plead either (1) that he "suffered a physical injury that caused the emotional distress"; (2) that he "suffered no injury, but experienced emotional distress from having been in the 'zone of danger'"; (3) that he "witnessed an accident that seriously injured a close family member"; or (4) that he "had a special relationship with the defendant that included in it an implied duty to care for their emotional well-being." *Finkbeiner v. Geisinger Clinic*, 623

F. Supp. 3d 458, 469 (M.D. Pa. 2022). Similar to their IIED defense, the defendants assert that the PSTCA shields them from liability from this tort, and further argue that even if liability is not precluded, the plaintiff still has not alleged a *prima facie* case of negligent infliction of emotional distress. Here, the PSTCA precludes negligent infliction of emotional distress claims against local officials, and thus, the plaintiff's claims fail.

We note again that the PSTCA specifically distinguishes liability for "negligent acts of the local agency or an employee … with respect to one of the [nine exceptions] listed…." Pa. Const. Stat. § 8542(a)(2). Therefore, the PSTCA only allows liability for claims listed in those exceptions. But NIED claims do not fall within any of the nine exceptions. *See Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 681 (E.D. Pa. 2015) (dismissing the plaintiff's NIED claims as they fail to fall within any of the PSTCA's exceptions); *see also Vega v. Columbia Borough*, No. CIV.A. 08-CV-05932, 2009 WL 2143549, at *5 (E.D. Pa. July 15, 2009) (collecting cases dismissing NIED claims due to immunity under the PSTCA). Unlike IIED claims which hold no protection under the PSTCA,

NIED claims are not intentional torts.[8] Therefore, the plaintiff's NIED claims against the defendants are barred by the PSTCA. For this reason, we will grant the defendants' motion to dismiss on these counts.

### G.    Fraud (Counts XI, XII, XXII)

The plaintiff alleges claims of fraud against defendants McTiernan, Hanni, and Schlingman. To plead a *prima facie* case of fraud, a plaintiff must show: "(1) a misrepresentation of material fact, (2) scienter, (3) intention by the maker of the misrepresentation to induce the recipient to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result." *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 415 (E.D. Pa. 2010) (quoting *Kuehner v. Parsons,* 107 Pa. Commw. 61, 64, 527 A.3d 627, 629 (1987)). As they did for previous claims, the defendants have moved for dismissal on the basis that the PSTCA shields them from liability for any

---

[8] The plaintiff attempts to classify her NIED claims as those that involve allegations of "actual malice, willful misconduct, and/or fraud." (Doc. 47). But courts have consistently held that a NIED claim cannot show "actual malice" or "willful misconduct" to qualify as an exception under the PSTCA because "a NIED claim, by definition, 'is predicated on negligence and not intent,' which contradicts the requirement of willful misconduct contained in § 8542(b)." *Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 681 (E.D. Pa. 2015).

claims of fraud. Moreover, they argue that even if the statute does not preclude liability, the Court should still dismiss the plaintiff's claims because of the plaintiff's failure to allege a *prima facie* case of fraud.

We need not go into much depth on whether the PSTCA provides immunity for local officials concerning fraud allegations. The PSTCA specifically exempts acts or conduct that constitute "actual fraud." Pa. Cons. Stat. § 8542(a)(2) (holding that local immunity does not extend to acts or conduct that constitute "a crime, actual fraud, actual malice or willful misconduct."); *see Gorrio v. Briggs*, No. 1:23-CV-01697, 2025 WL 2177826, at *12 (M.D. Pa. July 31, 2025) ("[T]he PSTCA bars [the plaintiff's] … false/fraudulent misrepresentation claims because the PSTCA provides an exception for Defendants' official immunity only for 'negligent acts.'"). Therefore, the plaintiff's allegations fall outside the scope of the PSTCA's immunity for local officials.

The amended complaint, however, does not sufficiently plead enough facts to satisfy a *prima facie* case of fraud in this action. The plaintiff alleges two instances of fraudulent actions: (1) the alteration of her Classroom Teaching Rating Form (Doc. 26, ¶ 86); and (2) the alteration of her Stand Alone Rubric Observation Report. (*Id.*, ¶ 39). The

plaintiff avers that defendant Hanni intentionally altered those documents for the purpose of furthering his deliberate campaign of retaliation by fraudulently submitting those forms to the District Administration and the Pennsylvania Department of Education. (*Id.*, ¶¶ 174, 175). But while the plaintiff's allegations may satisfy the first three elements of fraud, the plaintiff has failed to not only allege any justifiable reliance by the District Administration and the Pennsylvania Department of Education, but also allege any damage as a proximate result. The plaintiff only alleges that the documents were sent to those entities; nowhere within the amended complaint does the plaintiff allege that those entities acted upon those documents, much less justifiably relied on the alleged misrepresentations contained within those forms. Moreover, the plaintiff's position that reliance on these documents caused an injury "to the detriment of the entire educational process" is far too broad of an injury. Cognizable injuries must be "concrete and particularized" and not "speculative." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1976). Here, "the detriment of the entire education process" is neither concrete nor particularized. Indeed, it is wholly speculative.

For these reasons, the plaintiff has failed to satisfy the fourth and

fifth elements of her fraud-based claims, and thus, we will grant the defendants' motion to dismiss these counts and permit the plaintiff to amend.

## H.    Intrusion Upon Seclusion (Count XVI)

The plaintiff alleges an intrusion upon seclusion claim against defendant Hanni. A claim for intrusion upon seclusion requires the plaintiff to show that the defendant intentionally intruded "upon the solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would be highly offensive to a reasonable person." *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (quoting *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 120 (W.D. Pa. 2019). The invasion may be "(1) by physical intrusion into a place where the plaintiff has secluded himself; (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (quoting Restatement (Second) of Torts § 652B). However, "[i]t is now established that a person cannot have a reasonable or justifiable expectation of privacy in things or activities which are

generally visible from some public vantage point." *Commonwealth v. Lemanski*, 529 A.2d 1085, 1091 (Pa. Super. Ct. 1987) (citing *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). For this reason, "[t]his tort generally does not apply to matters which occur in a public place or a place otherwise open to the public eye." *Wolfson v. Lewis*, 924 F. Supp. 1413, 1419 (E.D. Pa. 1996).

Upon review of the plaintiff's amended complaint, the plaintiff's allegations only concern actions taken on public property or places open to the public eye. Thus, these actions have taken place where there is no reasonable expectation of privacy. As the defendants correctly note, "at all times [the plaintiff] interacted with or was observed by her supervisors or coworkers, she was in areas of her workplace." (Doc. 46, at 14). Indeed, the majority of the plaintiff's allegations take place on public school property during the plaintiff's employment, and the plaintiff's only other distinguishable allegation, one where she was viewed while sitting in her vehicle parked off school property, still fails to support a sufficient intrusion upon seclusion claim. *Wolfson*, 924 F. Supp. at 1420 ("[T]he traditional rule that watching or observing a person in a public place, or taking a photograph of a person who can be observed from a public

vantage point, is not generally an invasion of privacy."). The plaintiff alleges that defendant Hanni photographed her from a public vantage point, and while the plaintiff alleges that her car was parked off school property, she has failed to allege any facts indicating that she was parked off of public property. *Id.* (citing *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 509 (5th Cir. 1983)) (broadcasting a picture of the plaintiff's residence which showed nothing more than what could be seen from a public street is not an invasion of privacy). In other words, it is not enough that the plaintiff has alleged she was parked off school grounds; she must allege that she was located in an area with a reasonable expectation of privacy. She has not done so here. For this reason, we will grant the defendants' motion to dismiss this count and permit the plaintiff to amend.

I.    Defamation of Character, Slander, and Libel (Count XVII)

The plaintiff alleges defamation of character, slander, and libel against defendants McTiernan, Hanni, and Schlingman. Under Pennsylvania law, a plaintiff in a defamation action must prove: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the

recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a). The defendants, however, contend that they enjoy qualified immunity under 42 U.S.C. § 1983 that prevents the plaintiff from asserting her claims against them.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law,

qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 55 U.S. at 244).

However, an analysis of qualified immunity at the pleading stage is often "in tension with the reality that factual disputes often need to be resolved before determining whether [a] defendant's conduct violated a clearly established right." *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 669 (E.D. Pa. 2017) (citing *Curley v. Klem*, 298 F.3d 271, 277–78 (3d Cir. 2002)). For this reason, the Third Circuit has cautioned, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam). Therefore, in the context of the defendants' defense of qualified immunity, we find this issue premature at this stage. *Martin-McFarlane*, 299 F. Supp. 3d at 669 (citing *Curley*, 298 F.3d at 278) (noting that a decision on qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis."). We must deny the defendants' motion to dismiss on the issue of qualified immunity.

## J.    Civil Conspiracy (Count XVIII)

The plaintiff alleges civil conspiracy claims against defendants McTiernan, Hanni, and Schlingman. To state a claim for civil conspiracy, Pennsylvania law requires the plaintiff to demonstrate that an overt unlawful act was "done in pursuance of the common purpose" by a combination of two or more persons and that the unlawful act caused "actual legal damage." *Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012) (quoting *Com. v. TAP Pharm. Prods., Inc.*, 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011)). In other words, courts analyze civil conspiracy claims as three factors: "(1) a combination of two or more persons acting withing a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). The defendants move to dismiss the plaintiff's civil conspiracy claim on the basis of qualified immunity. However, the defendants' argument mimics its argument concerning the plaintiff's defamation claim and thus, the result remains the same. We find the issue of qualified immunity to be premature at this stage. We will

therefore deny the defendants' motion to dismiss on this count.

### K.    Monell Liability (Count XIX)

The plaintiff alleges a *Monell* claim under § 1983 against SSD. "On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991). In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can only be liable under § 1983 if the alleged unconstitutional conduct either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Here, the defendants move to dismiss the plaintiff's *Monell* claim not on substantive grounds, but rather on the basis that she "conflates the theory of vicarious liability established in the *Monell* case with her incorrect understanding that *Monell* creates an independent cause of action against a government entity." (Doc. 46, at 19). However, our review of the plaintiff's amended complaint finds that the plaintiff has pled her *Monell* claim as an independent action; she has pled her *Monell* claim under § 1983. Therefore, the defendants' sole argument fails and we will deny the defendants' motion to dismiss on this count.

### L.   Whistleblower Protection (Counts XIII-XV, XXV)

The plaintiff alleges violations of federal and state Whistleblower Protection laws against defendants SSD, McTiernan, Hanni, and Schlingman. However, we must note that while the plaintiff alleges

violations of a federal Whistleblower Protection statute, the plaintiff has failed to identify any federal statute in her amended complaint or supporting documents. Indeed, both parties treat this claim as one only sounded in state law under the Pennsylvania Whistleblower Law. We therefore find that the plaintiff only asserts a violation under state law.

The Pennsylvania Whistleblower Law generally provides that:

> No employer may discharge, threaten or otherwise discriminate or *retaliate* against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes *a good faith report* or is about to report, verbally or in writing, to the employer or appropriate authority *an instance of wrongdoing* or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a) (emphasis added). Pertinent to this action, the statute prevents employers from retaliating against employees for a good faith report to an employer or appropriate authority concerning an instance of wrongdoing. The plaintiff here has argued that defendant Hanni, and others, retaliated against the plaintiff "for reporting the safety issue of not having an administrator present at the softball game." (Doc. 47, at 29).

Nonetheless, the statute clarifies that a party alleging a violation

of the act must bring an action within 180 days after the occurrence of

the alleged violation. 43 P.S. § 1424(a) ("A person who alleges a violation

of this act may bring a civil action in a court of competent jurisdiction for

appropriate injunctive relief or damages, or both, within 180 days after

the occurrence of the alleged violation."). The defendants have moved to

dismiss the plaintiff's whistleblower claims on the basis that her claims

are time-barred because they were not brought within 180 days of the

alleged wrongful action. The defendants argue that the alleged violation

occurred on April 5, 2022, when the plaintiff reported defendant Hanni's

absence from the softball game. Therefore, the defendants believe that

when the plaintiff filed her complaint in the Court of Common Pleas of

Lackawanna County on October 10, 2023, her whistleblower claim fell

outside of the 180-day time frame allowed by statute. The defendants'

contention, however, is mistaken.

Courts have found that the 180-day requirement applies to actions

taken in retaliation for a good faith report, rather than the date of the

good faith report itself. *See Cooper v. Pennsylvania Hum. Rels. Comm'n*,

578 F. Supp. 3d 649, 669–670 (M.D. Pa. 2022) (applying the 180-day

statute of limitations imposed by the Pennsylvania Whistleblower Law

to the defendant's retaliatory action); *Gillispie v. Regionalcare Hosp. Partners, Inc.*, No. CIV.A. 13-1534, 2015 WL 1839149, at *4 (W.D. Pa. Apr. 21, 2015) (relating the 180-day statute of limitations requirement to the plaintiff's termination). Here, the plaintiff alleges that the defendants' retaliation occurred through June 20, 2023. (Doc. 47, at 30). The plaintiff filed her complaint in the Court of Common Pleas of Lackawanna County on October 10, 2023. (Doc. 1-1). Therefore, the plaintiff's whistleblower claims are not time-barred because they were filed within the appropriate 180-day time from the last alleged violation of the Whistleblower Protection Law, i.e., the defendants' retaliatory conduct on June 20, 2023.

The defendants also move to dismiss the plaintiff's whistleblower claims on the grounds that the plaintiff has failed to report any government wrongdoing necessary for her claims. Pennsylvania courts have defined "wrongdoing" as "a violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *See Gray v. Hafer*, 651 A.2d 221, 224 (Pa. Commw. Ct. 1994) *aff'd*, 669

A.2d 335 (Pa. 1995) (quoting 43 Pa. Stat. Ann. § 1422). Moreover, the term "wrongdoing" has been interpreted as a violation of "a legal or ethical norm 'designed to protect the interest of the public or the employer.'" *Rankin v. City of Philadelphia*, 963 F. Supp. 463, 470 (E.D. Pa. 1997).

The plaintiff contends that she reported defendant Hanni for wrongdoing under the School Board Policy Manual, Section 800 Operations, Title: Emergency Preparedness and Response, Code 805, which states "the Board recognizes its responsibility for the safety of students, staff, visitors and facilities." (Doc. 47, at 32). But even viewing the allegations in light most favorable to the plaintiff, the plaintiff's allegations consist of the "merely technical or minimal nature" that the Whistleblower Protection Law distinguishes falls short of actionable conduct. While the plaintiff identifies the School Board's recognition of a general responsibility for the safety of others, one that we note is attenuated at best to constitute an ordinance or regulation designed "to protect the interest of the public," the plaintiff has failed to identify any authority that required defendant Hanni to be present at the softball game. Indeed, the record is devoid of any allegation that a particular

policy required an administrator to be present at the softball game, much less defendant Hanni himself. Therefore, absent any identifiable obligation, we find the plaintiff's allegations that defendant Hanni's absence from the softball game constituted "wrongdoing" to be insufficient for purposes of her whistleblower claim.

## IV.    Conclusion

For the foregoing reasons, we shall grant the defendants' motion to dismiss in part and deny the motion to dismiss in part.

We will grant the defendants' motion to dismiss concerning the plaintiff's claims of retaliation (Counts I, II, III), negligent infliction of emotional distress (Counts IX, X, XXIV), First Amendment retaliation (Count XX), intentional infliction of emotional distress (Counts VII, VIII, XXIII), fraud (Counts XI, XII, XXII), intrusion upon seclusion (Count XVI), violations of the Fourth Amendment's due process (Count XXI), and whistleblower violations (Counts XIII, XIV, XV, XXV).

We will deny the defendants' motion to dismiss concerning the plaintiff's claims of discrimination (Counts IV, V, VI), defamation, slander, and libel (Count XVII), civil conspiracy (Count XVIII), and *Monell* liability (Count XIX).

An appropriate order follows.


Dated: September 2, 2025                    *s/Joseph F. Saporito, Jr.*
                                            JOSEPH F. SAPORITO, JR.
                                            United States District Judge